(C.D. 3962)

CONSOLIDATED SEWING MACHINE CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 5, 1970)

*Sharretts, Paley, Carter & Blauvelt* (*Thomas J. McKenna* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *Steven R. Sosnov*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: An importation of electric motors made by plaintiff corporation was classified under provisions for electric motors under paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and assessed with duty at the rate of 12½ per centum ad valorem. Plaintiff contends the involved motors are specially designed for use with domestic sewing machines and as such are properly subject to duty at the rate of 10 per centum ad valorem as parts of sewing machines under paragraph 372, as modified, *supra*.

The pertinent portions of the statutes involved read as follows:
Paragraph 353, Tariff Act of 1930, as modified by T.D. 52739:

> Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>> Electric motors, furnaces, heaters, and ovens _____ 12½% ad val.

Paragraph 372, Tariff Act of 1930, as modified by T.D. 52739:

> Parts, not specially provided for, wholly or in chief value of metal * * *, of any article provided for in any item 372 in the Part:
>> Parts of sewing machines_____ 10% ad val.

The record as made herein consists of the testimony of one witness called on behalf of plaintiff and one called on behalf of defendant. Plaintiff's exhibit 1 is a sample of the imported motor with tags identifying the armature 1A, the field 1B and the housing 1C. Defendant's exhibit A is a motor and exhibit B a motor without a housing.

Werner W. Schwartz, chief engineer of plaintiff corporation, has been with the firm since 1937. Mr. Schwartz holds an engineering degree and his duties with plaintiff corporation include examination of sewing machines and their components with a view of recommending modification or redesign. The business of plaintiff is the importation of assemblies of home-type sewing machines.

The witness is familiar with plaintiff's exhibit 1 since he redesigned the motor for the purpose of utilizing it with his company's sewing machines. Exhibit 1 was designed to permit easy control and eliminate magnetic growl or objectionable noise. The number of segments or laminations on the commutator and the angularity of skewing of the slots on the rotor have an important effect on the characteristics of the motor.

While the speed of the motor is controlled by a rheostat, the response of the motor at reduced voltage is of great consequence. High torque at low speed without objectionable noise is what was sought in the design of exhibit 1. Torque is the rotational pull produced by the motor.

Mr. Schwartz testified that the motor is essential to the operation of the home sewing machine. His company never sells exhibit 1 as a motor nor has it ever been utilized except in a sewing machine by plaintiff.

Mr. Alexander Sharenow called on behalf of defendant testified that he is president of Empire Machine whose business is the manufacture and importation of series, universal and AC/DC motors. The witness stated he was familiar with the motor, exhibits 1A and 1B, but not the housing. The motor the witness imported from ACEC is essentially the same as exhibit 1 but he was not certain whether it had skewing. The skewing is to eliminate magnetic growl. The brush rigging is different. Exhibit 1 has internal brushes and the one from ACEC had outside brushes. When asked if there was any difference in performance he answered as follows:

> A. I cannot tell, because a performance is not merely the material used. It depends on the magnetic wire used in the armature and the field, the number of turns and the thickness of the wire.

For a number of years, the witness sold motors to plaintiff for their use on sewing machines and those motors were also sold by him to people who made little lathes such as jewelers lathes and sanders. Defendant's exhibit A was identified by the witness as a series motor imported by him which is used primarily in the sewing machine field. Exhibit A is also used for winding machines, jewelers lathes and hobbies. The differences between exhibits A, B, and 1 are: the lamination of exhibit 1 is slightly smaller, the slots on exhibit 1A are skewed and on exhibit B they are parallel; the pole tips are filed off in exhibit B and not in exhibit 1; the commutator is staked on exhibit 1 and welded on exhibit A; the bearing retainers in exhibit A are round while they are almost rectangular in exhibit 1. These differences are for the most part manufacturing techniques which are used depending upon the price of the motor manufactured.

The witness on cross-examination testified that he had not seen complete motors such as exhibit 1 used since 1957 nor has he tested them, but he had seen the motors without the housing used since 1957. Mr. Sharenow testified that when a motor has more than one use, notwithstanding its design for sewing machines, it is a dual or multipurpose motor.

Based upon the record as made plaintiff contends the involved motors were designed for use with home sewing machines and are dedicated to such use by virtue thereof. Plaintiff relies upon the dedication theory for the determination of the term "parts" as enunciated in the case of *J. J. Boll, et al.* v. *United States*, 55 CCPA 86, C.A.D. 937

(1968). See also *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849 (1964), and cases cited therein. In the *Boll* case, *supra*, the court made the following comment:

> * * * The test for provisions for "parts" is whether the imported article is dedicated to use as a part of the specified article. *United States* v. *Ford Motor Co.*, 51 CCPA 22, C.A.D. 831. There certain parts employed in internal combustion engines were held classifiable as parts of internal combustion engines, rather than as parts of automobiles, because the engines in which the parts were used were not dedicated to use in automobiles. * * *

The testimony of the witness called on behalf of plaintiff who designed or redesigned the involved motors established to our satisfaction the dedication of said motors to use with home sewing machines. The testimony of the witness called on behalf of defendant to the effect that plaintiff's exhibit 1 and defendant's exhibits A and B are sewing machine motors which have other uses such as in jewelers lathes, etc., does not deter us from our conclusion. The similarity of plaintiff's exhibit 1 and defendant's exhibits A and B has not been established sufficiently. In addition the witness had not tested the involved motors. Even if we were to accept the other uses alluded to by defendant's witness, it does not necessarily detract from the dedication test. In the *Boll* case, *supra*, the court covered such a situation in its following statement:

> * * * Applying that test to the evidence, we conclude that appellants have made a prima facie case, unrebutted by appellee, that the tubes are not dedicated to use as parts only of laboratory apparatus.

> It is true that the evidence does not demonstrate that every one of the diversified devices in which the tubes are used are employed as other than laboratory instruments. * * *

In view of the foregoing and for the reasons set forth, we do not deem it necessary to utilize the power invested in this court under 28 U.S.C., section 2639, and have the motors analyzed by the Customs Laboratory as urged by defendant.

The claim in the protest that said motors are properly subject to classification as parts of sewing machines under the provisions of paragraph 372, *supra*, is sustained.

Judgment will be entered accordingly.